12091

IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEELA MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 07 C 3332 |
| | ) | |
| DET. KARNER and THE VILLAGE OF FLOSSMOOR, | ) | Judge Samuel Der-Yeghiayan |
| | ) | |
| Defendants. | ) | Magistrate Judge Valdez |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COMES the Defendants, DETECTIVE DENNIS KARNER and THE VILLAGE OF FLOSSMOOR, by and through their attorneys, James L DeAno and Scott B. Dolezal, and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, hereby submit the following memorandum of law in further support of their motion for summary judgment:

**I.   DETECTIVE KARNER IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FALSE ARREST AND MALICIOUS PROSECUTION CLAIM BECAUSE PROBABLE CAUSED EXISTED TO ARREST**

In Count I of her complaint, Plaintiff alleges that Detective Karner violated her constitutional rights by arresting without probable cause. In Count II, Plaintiff alleges that Detective Karner violated her state law rights by maliciously prosecuting her. The existence of probable cause is an absolute bar to Miller's Section 1983 false arrest claim. Kelly v. Myler, 149 F.3d 641, 646 (7th Cir. 1998). Similarly, probable cause will defeat malicious prosecution claim arising under Illinois state law. Johnson v. Target Stores, 341 Ill.App.3d 56 (Ill.Ct.App. 2003).

Probable cause to arrest exists when "the facts and circumstances within [a police officer's] knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent person to believe the suspect has committed or was committing an offense." Booker v. Ward, 94 F.3d 1052, 1057 (7th Cir. 1996). Probable cause does not require sufficient evidence to support a conviction beyond a reasonable doubt. United States v. Burrell, 963 F.2d 976, 986 (7th Cir. 1992). Instead, it exists if the totality of the circumstances reveals a probability or substantial likelihood of criminal activity by the suspect. Unites States v. Levy, 990 F.2d 971, 973 (7th Cir. 1993). In determining whether probable cause exists, the facts should be observed "from the perspective of the arresting officer and not as an omniscient observer." Sheik-Abdi v. McClellan, 37 F.1240, 1246 (7th Cir. 1994). "Probable cause is a zone, not a precise point, and within the zone, there is room for reasonable error." Gray v. Burr, 446 F.Supp.2d 991, 996 (N.D. Ill. 1996), citing Kelly v. Myler, 149 F.3d 641, 646 (7th Cir. 1998). When determining whether probable cause exists, it is necessary to look to the requirements of state law. Pourghoraishi v. Flying J, Inc., 449 F.3d 751, 761 (7th Cir. 2006). In this case, applying the Illinois Criminal Code regarding identity theft and theft of services, Detective Karner had probable cause to arrest Miller, and he is entitled to summary judgment.

a.  <u>Detective Karner Had Probable Cause to Arrest Leela Miller for Identity Theft</u>

In Illinois, a person commits identity theft "when he or she knowingly . . . uses any personal identifying information or personal identification documents of another person to fraudulently obtain credit, money, goods, services or other property . . . ." 720 ILCS 5/16G-15(a). Personal identifying information includes a person's name, address, telephone number, and date of birth. 720 ILCS 5/16G-10. In People v. Montoya, 373 Ill.App.3d 78 (2d Dist. 2007), the Illinois Appellate Court determined that the defendant violated the Act and committed

2

identity theft when she used another person's name and social security number to secure employment and health insurance. The court also found that she then provided the health insurance information to a hospital when she received medical treatment. Id. at 78-79. The defendant arranged for hospital bills to be mailed to her address. Id. When she moved and changed her mailing address, however, the defendant's hospital bills began arriving at the identity theft victim's home. Id. at 390. The victim contacted the insurance company and the hospital, and learned that the defendant used her name and social security number to secure employment and medical services. Id. at 390-91. The victim contacted the police, who conducted an investigation and learned where the defendant worked. Id. The defendant admitted to using someone else's "card," and was convicted of two counts of identity theft. Id.

On appeal, the defendant argued that she had not committed identity theft when she presented another person's social security number to secure her employment. Id. She argued that she did not "fraudulently obtain" goods and services because she earned the wages and benefits. Id. at 393. The court rejected this argument, finding that the defendant "fraudulently obtained" money and services as a result of her unauthorized use of another person's name and social security number. Id. at 394. The court further found that she obtained compensation, insurance and employment by misrepresenting herself as someone else. Id. The court identified the fraudulent behavior as the use of the identifying information to obtain employment and benefits.. Id. at 395.

In this case, Detective Karner had probable cause to arrest Leela Miller for identity theft because the information he reasonably relieved on at the time of the arrest led him to believe that Miller had provided someone else's personal identifying information to secure medical services for her daughter. Specifically, Karner reasonably believed that Miller used Susan Palmer's

3

address and Catherine Terry's telephone number to obtain medical treatment. Like the identity theft victim in Montoya, Susan Palmer reported to the Police Department after she received a medical bill addressed to another person. Statement of Facts at para. 5-6. Based on this report, Karner also learned that Palmer was a victim of identity theft in the past and that she had received medical bills addressed to Leela Miller at her previous address at or around the time of the prior identity theft. Statement of Facts at para. 21-22. Karner knew that she had recently moved and Miller's medical bills were sent to both her new and old address. Statement of Facts at para. 21-23. The bill was sent directly to Palmer's home; it had not been forwarded from her previous address. Statement of Facts at para. 9. Palmer indicated when she made her report that she did not know Leela Miller; that she had not given Miller permission to use her address for medical billing purposes; and that she had not received medical treatment at the facility identified on the medical bill. Statement of Facts at para. 18. Karner also knew that Palmer had never been to Ingalls. Statement of Facts at para 24. He believed, therefore, that it was unlikely that the bill was sent to Palmer as a result of a billing error. Id. Based on the information he received, Karner believed that it was possible Miller was using Palmer's personal identifying information so that the bills would follow Palmer from one address to another. Statement of Facts at para. 23.

Karner began his investigation by contacting the company that sent Palmer the bill. Statement of Facts at para. 25. He spoke to a representative for Sullivan's, the billing agent for Ingalls, who informed him that Leela Miller's listed addresses were on 3121 Stonegate Court and Bob-O-Link Drive in Flossmoor and that she reported that her phone number was 708-925-2137. Statement of Facts at para. 25-26. Karner knew that Palmer's previous address was 3121 Stonegate Drive and that she currently lived on Bob-O-Link drive. Statement of Facts at para.

4

21-23. Plaintiff has not and can not produce any evidence which would indicate that this was not the information provided by Sullivan's or that Karner was unreasonable in accepting this information to be true.

Detective Karner continued his investigation and conducted a search of the law enforcement database that includes public, private and government records. Statement of Facts at para. 27-28. This search revealed no records which would establish that Miller ever lived on Stonegate Court or Bob-O-Link Drive, or that she had ever lived in the Village of Flossmoor. Id. at para 29. He did learn, however, that Miller's driver's license indicted that she lived on Huntington Drive in Orland Park. Id. at 27. When he went to this address and spoke to the owner of the property, he learned that Miller had not lived at the residence since at least August 2005 when the new owner moved into the home. Id. at para. 34-35.

Detective Karner also contacted the phone number that Miller reportedly provided to Ingalls. Statement of Facts at para. 32. When he called the number, however, he did not reach Leela Miller. Statement of Facts at para. 32. Instead, he spoke to Catherine Terry. Id. at para. 32. Terry told him that the phone number was registered to her, not Leela Miller. Id. She also reported that she did not know Miller, that Miller was not authorized to use her phone number for billing purposes, that she had not received medical care at Ingalls and that she did not know why Miller would have provided Ingalls with her phone number. Id. at para. 32. Detective Miller then obtained a grand jury subpoena for the phone records associated with this phone number. Statement of Facts at para. 33. The subpoena response indicated that the phone number had been assigned to Catherine Terry on April 28, 2005, nearly a year before Miller sought treatment at Ingalls. Statement of Facts at para. 33.

On the day of her arrest, Karner had a short conversation with Miller. Statement of Facts at para. 38. During this conversation, Miller confirmed that she had received medical services for her daughter Vonya at Ingalls in April 2006, confirming that the services were actually provided. Statement of Facts at para. 38. She was then arrested and asserted her Fifth Amendment rights and provided Detective Karner with no information which would refute the information he received from Sullivan's, Susan Palmer or Catherine Terry. Statement of Facts at para. 40.

At no point prior to the arrest did Detective Karner ever learn any information which would have indicated that the information provided by Sullivan's was incorrect and at no point did he learn any information which would have indicated this was a billing error rather than a concerted effort to avoid payment of a bill by providing the personal identifying information of others. Statement of Facts at para. 50. Based on his training and experience, he knew that victims of identity theft could still be in possession of their personal identification and that it could still be stolen. Id. at 46-48. He believed that probable cause existed to arrest her. Id. at 47.

Plaintiff can produce, and has not produced, any evidence indicating that Detective Karner did not possess the information he claims to have possessed at the time of the arrest and has presented no evidence which would establish that the information he received was not reasonably relied upon. In the absence of any information indicating that the information he received was not reliable, Karner was entitled to assume that the information he received was correct. Moore v. Marketplace Restaurant, 754 F.2d 1336, 1345, n. 11 (7th Cir. 1985) (information provided to the police by private citizens is presumed to be reliable). As a result, even if the information Karner received from Sullivan's was in error, he was reasonable in his

reliance on the information is both reasonable and proper unless Plaintiff comes forward with evidence which should have indicated to Karner that the information he received was incorrect or otherwise unreliable. Plaintiff has no such evidence. The information known to Karner at the time of the arrest reasonably led him to believe the Miller provided the personal identifying information of Susan Palmer and Catherine Terry to fraudulently obtain medical services. Statement of Facts at para. 23. As a result, Detective Karner is entitled to summary judgment on Miller's false arrest and malicious prosecution claims.

  b. <u>Detective Karner Had Probable Cause to Arrest Leela Miller for Theft of Services</u>

Under Illinois law, a person commits the crime of theft of services "when he obtains the temporary use of property, labor or services of another which are available only for hire, by means of threat or deception or knowing that such use is without the consent of the person providing the property, labor or services." 720 ILCS 5/16-3. There must be an intent to deprive the seller of the rightful cost of the services rendered. People v. Mills, 356 Ill. App. 3d 438, 825 N.E.2d 1227, 1232 (Ill.App.2d Dist. 2005). Based on the information known to Detective Karner at the time of the arrest, probable cause existed to arrest Miller for the crime of theft of services. Statement of Facts at para. 23. Detective Karner reasonably believed that Miller obtained medical services through deception when she provided incorrect billing contact information. Statement of Facts at para. 23. As a result, he is entitled to summary judgment.

At the time of the arrest, Detective Karner knew that Miller had supplied her name, an address, phone number, and the name of her current employer. Statement of Facts at para. 25. He knew that this identifying information was requested of her, she provided the answers, and that it was used for billing purposes in exchange for medical services. Statement of Facts at para. 25. Based on the information contained on the bill and his conversation with Miller,

7

Karner knew Miller's daughter received the medical care that she sought. Statement of Facts at para. 38. When Karner attempted to verify the personal identifying information Miller provided in exchange for the medical care, however, he was unable to confirm anything other than Miller's name. Statement of Facts at para. 25-36.

Karner was told by a Sullivan's representative that Miller provided them with an address on Stonegate Court and Bob-O-Link Drive in Flossmoor. Statement of Facts at para. 26. Based on Palmer's complaint and the information supplied by Palmer, Karner knew Miller did not live at the address to which the bill was sent. Statement of Facts at para. 21. He was told that this address was provided to Ingalls by Miller herself. Statement of Facts at para. 25-26. He also could find no information in the LEADS system indicating that Miller ever lived on Stonegate Court, Bob-O-Link Drive or anywhere else in the Village of Flossmoor. Statement of Facts at para. 27-28. He knew that Palmer received bills addressed to Miller at her Stonegate address and that Miller did not live at Palmer's address during the relevant time period. Statement of Facts at para. 21. When Karner attempted to verify the address for Miller that was maintained by the Illinois Secretary of State, he was similarly unable to obtain confirmation of her address. Statement of Facts at para. 28-29, 34-35.

When he called the telephone number Miller provided Ingalls, he was again unable to confirm the information she gave. Statement of Facts at para. 31-33. He contacted the telephone number and learned from Catherine Terry that the number was assigned to her, not Leela Miller. Statement of Facts at para. 32. He also learned that Miller was not authorized to use the phone number or to provide it to others for billing purposes. Statement of Facts at para. 32.

Finally, Detective Karner attempted to verify the employment information Miller provided to Ingalls when she received medical care for her daughter. Statement of Facts at para.

8

36. He contacted Sergeant Debra Boyd of the Governor's State University Police and learned that Miller was not employed by the University as she reported. Statement of Facts at para. 36. Although she was involved in organizing a University choir, she was not a University employee. Statement of Facts at para. 36.

Based on the information known to Karner at the time of the arrest, probable cause existed to arrest her. Statement of Facts at para. 47. Karner knew that Miller provided Ingalls with four pieces of identifying information: her name, address, phone number and name of her present employer. Statement of Facts at para. 25. The only thing he could independently verify, however, was Miller's name. Statement of Facts at para. 26-36. He knew Miller did not live on Bob-O-Link Drive, and he could find no indication that she ever lived on Stonegate Court. Statement of Facts at para. 29. He could not contact her by telephone because the telephone number she provided was assigned to someone else. Statement of Facts at para. 32-33. Karner's inability to independently verify the basic identifying information Miller provided Ingalls led him to believe that she was purposely provided false identifying information to avoid payment for the services she and her daughter were provided. Statement of Facts at para. 23.

By providing false personal contact information, Karner believed that Miller was attempting to gain the benefit of the medical services without paying them through deceptive means. Statement of Facts at para. 23. Miller admitted to Karner, and there is no dispute, that Miller sought medical care from Ingalls on the day indicated on the bill that was sent to Susan Palmer. Statement of Facts at para. 38. He also knew that the bill was unlikely to have been sent to Palmer as a result of a billing error because Palmer had never sought services at Ingalls. Statement of Facts at para. 24. Based on the information he knew from his investigation,

Miller's admission, Karner had probable cause to arrest Miller for theft of services. As a result, he is entitled to summary judgment on Plaintiff's false arrest and malicious prosecution claims.

## II. DETECTIVE KARNER IS ENTITLED TO QUALIFIED IMMUNITY BECAUSE PROBABLE CAUSE ARGUABLY EXISTED TO ARREST THE PLAINTIFF

Qualified immunity protects government officials who reasonably but mistakenly conclude that probable cause to arrest exists. Spiegel v. Cortese, 196 F. 3d 717, 723 (7th Cir. 2000). A police officer is immune from liability if a reasonable officer could have believed plaintiff's arrest and imprisonment were lawful under clearly established law with the information that he possessed. Hunter v. Bryant, 483 U.S. 224, 227 (1991). To determine whether an officer is entitled to qualified immunity, the court considers: 1) whether the law was clearly established at the time of the alleged violation; and 2) "whether reasonably competent officials would agree on the application of the clearly established right to a given set of facts." Biddle v. Martin, 992 F.2d 673, 675 (7th Cir. 1993). When the second element is proven, arguable probable cause exists and the officer is entitled to qualified immunity. Humphrey v. Staszak, 148 F.3d 719, 725 (7th Cir. 1998. In other words, on a false arrest claim, a police officer is entitled to qualified immunity if "a reasonable police officer in the same circumstances, with the same knowledge . . . as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law." Id. (emphasis in original)(internal citations omitted).

The Plaintiff in this case had a clearly established right to be free from arrest and prosecution without probable cause. In this case, however, even if probable cause did not exist to arrest Miller for identity theft or theft of services, reasonably competent officers could agree that probable cause did exist and Karner is entitled to summary judgment. A reasonable police office with the knowledge possessed by Detective Karner could reasonably conclude that Miller

10

committed identity theft by using the personal identifying information of another to fraudulently obtain services. The information Karner received from Susan Palmer when she made her report and that he received from Sullivan's was reasonably relied upon. A reasonable police officer would believe that the information received by a complaining witness is correct. Moore v. Marketplace Restaurant, 754 F.2d 1336, 1345, n. 11 (7th Cir. 1985). A reasonable officer would also reasonably believe that information maintained and provided to police by a large medical facility would be correct. Otherwise, the medical facility would have no means to obtain payment for the services it provides. It is also reasonable to believe that the personal identifying information was supplied by Miller when she sought medical treatment. Plaintiff has produced no evidence that would indicate that this information was not reasonably relied upon.

The information provided to Karner would lead any reasonable police officer to conclude that Miller provided false information to avoid payment of the bill. Miller, the person who provided the information, would be in the best position to know her address and phone number. When he attempted to verify this information, however, Karner was unable to do so. He was unable to locate any information that Miller ever lived in the Village of Flossmoor. Statement of Facts at para. 29. The results of a grand jury subpoena indicated that that phone number given to Sullivan's by Miller belonged to someone else and had since April 28, 2005, a year before the medical treatment was sought. Statement of Facts at para. 33. Under these circumstances, a reasonable officer could conclude that probable cause existed to arrest Miller for providing the personal identifying information to obtain the medical services in violation of the Identity Theft Law.

A reasonable officer could similarly conclude that Miller obtained the medical services through means of deception by providing falsified contact information and thereby committed

11

theft of services. A reasonable officer would know that the personal identifying information is used both to obtain medical history information and for billing purposes. A reasonable officer would also know that by providing an incorrect address and telephone number that payment for medical services could be avoided. A reasonable officer would also believe, as Karner did, that the bill was unlikely to have been sent to Palmer as a result of an error because Palmer had never been to Ingalls before. Statement of Facts at para. 24. At the time of the arrest, Detective Karner acted reasonably in relying on the information provided by Sullivan's, Palmer and Terry, and any reasonable officer in his position would similarly rely on this information. The information Karner obtained indicated that the medical services were rendered, and that Miller provided an incorrect address and telephone number when she received these services. Any reasonable officer in this situation, faced with these facts, would conclude that the false information was provided for the purpose of avoiding payment. Under the Illinois Criminal Code, this constitutes theft of services and a police officer could reasonably conclude that probable cause existed to arrest Miller. As a result, Detective Karner is entitled to qualified immunity.

### III. DETECTIVE KARNER IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S MALICIOUS PROSECUTION CLAIM BECAUSE SHE CANNOT SATISFY THE REMAINING ELEMENTS OF HER CLAIM

In order to establish a malicious prosecution action, the plaintiff must establish the following: "1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; 2) the termination of the proceeding in favor of the plaintiff; 3) the absence of probable cause for such proceeding; 4) the presence of malice; and 5) damages resulting to the plaintiff." Swick v. Liautaud, 169 Ill.2d 504, 512 (Ill. 1996) (citations omitted). For the reasons stated previously, probable cause existed to prosecute Miller for identity theft and theft of services. Even if probable cause did not exist, however, the Detective Karner is

entitled to summary judgment on Miller's malicious prosecution claim because she cannot establish that the proceedings terminated in her favor as that term has been defined by applicable case law and because there is no evidence that the criminal proceedings were initiated maliciously.

    a. <u>Plaintiff Cannot Establish Detective Karner Initiated the Proceedings Against Her Maliciously</u>

In order to succeed on her malicious prosecution claim against Detective Karner, Plaintiff must produce some evidence that the criminal charges were initiated with malice. <u>Swick v. Liautaud</u>, 169 Ill.2d 504, 512 (Ill. 1996) (citations omitted). Plaintiff has produced no evidence of malice in the initiation of the criminal proceedings. The proceedings were brought after Detective Karner conducted an investigation that included interviewing at least four witnesses and receiving a grand jury subpoena. Statement of Facts at para. 25, 31, 32, 34, 36. Detective Karner had no prior contact with the Plaintiff and there is no evidence that he had any pre-existing ill will toward her. Statement of Facts at para. 51. Miller had no contact with the Flossmoor Police Department prior to her arrest. <u>Id</u>. Through December 2007, she has not seen Detective Karner since the arrest. <u>Id</u>. at 52. She has similarly had no contact with the Flossmoor Police Department following the arrest. <u>Id</u>. Because Plaintiff cannot establish that the charges were initiated with malice, Karner is entitled to summary judgment.

    b. <u>Plaintiff Cannot Establish that the Criminal Proceedings Terminated in a Manner Indicative of Her Innocence</u>

In order to succeed on her malicious prosecution claim, Miller must prove that the criminal matter terminated in her favor. <u>Swick v. Liautaud</u>, 179 Ill.2d 502, 512 (Ill. 1996) (citations omitted). A malicious prosecution action cannot be predicated on a criminal proceeding unless the termination was in a manner indicative of the innocence of the accused.

Id. Thus, Miller must establish that the criminal charges terminated in a manner indicative of her innocence. When a prosecutor abandons a proceeding, the plaintiff must establish that the dismissal was entered for reasons consistent with her innocence. Id. at 513-14. Evidence that the case was dismissed by the prosecutor, without more, will not establish that the matter was terminated in a manner indicative of innocence. Id.

In this case, there is no evidence that the theft of services charges brought against Miller were dismissed for a reason which would indicate her innocence. It is undisputed that the criminal charges were immediately dismissed when Detective Karner was unavailable to testify as a prosecution witness when the case was called for trial. Statement of Facts at para. 43, 45. There is no evidence that there was any hearing at which witnesses testified. The complaining officer was not in court. Statement of Facts at para. 43. In the absence of any evidence that the theft of services charge was dismissed in a matter indicative of Miller's innocence, Detective Karner is entitled to summary judgment on her malicious prosecution claim.

### IV. THE VILLAGE OF FLOSSMOOR IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF IS NOT ENTITLED TO INDEMNIFICATION

The only claim brought against the Village of Flossmoor is for statutory indemnification pursuant to 745 ILCS 10/9-102. Plaintiff can succeed on this claim only if its employee is liable for malicious prosecution. For the reasons stated previously stated, Detective Karner is entitled to summary judgment on Plaintiff's malicious prosecution claim. As a result, there is no act for which the Village must indemnify him. The Village is therefore entitled to summary judgment.

WHEREFORE, the Defendants, DETECTIVE DENNIS KARNER and THE VILLAGE OF FLOSSMOOR, respectfully request that summary judgment be entered in their favor, and that this matter be dismissed with prejudice.

Respectfully submitted,

DeAno & Scarry, LLC.


_s/ Scott B. Dolezal_
Attorney for Defendants

James L. DeAno – No. 6180161
Scott B. Dolezal – No. 6274826
53 West Jackson Blvd.
Suite 1062
Chicago, Illinois 60604
Ph: (630) 690-2800
Fx: (312) 564-4125

15