IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LEELA MILLER,                  )
                               )
        Plaintiff,             )
                               )
   v.                          )    No. 07 C 3332
                               )
                               )
DET. KARNER, et al.            )
                               )
        Defendants.            )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Detective Karner's ("Karner") and Defendant Village of Flossmoor's ("Village") motion for summary judgment. For the reasons stated below, we grant the motion for summary judgment in its entirety.

## BACKGROUND

Plaintiff Leela Miller ("Miller") alleges that on July 7, 2006, Karner, acting on behalf of the Village, placed Miller under arrest for theft of services or property. Miller alleges that Karner did not have a search warrant or an arrest warrant and that he illegally stopped and searched her. According to Miller, Karner also wrote false

1

and misleading police reports alleging that Miller had engaged in theft of services or property. Charges were allegedly brought against Miller, but later dismissed on October 6, 2006, when Karner did not show up to the hearing.

Miller brought the instant action on June 13, 2007, and includes a claim under 42 U.S.C. § 1983 ("Section 1983") for false arrest (Count I), a state law claim for malicious prosecution (Count II), and a claim for statutory indemnification against the Village (Count III). Defendants have brought the instant motion for summary judgment on all claims.

## **LEGAL STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set

forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

Defendants make several arguments to support their motion for summary judgment. First, Defendants argue that Karner is entitled to summary judgment on the Section 1983 false arrest claim and the state law claim for malicious prosecution since the undisputed facts establish that probable cause existed to arrest Miller for both identity theft and theft of services. Second, Defendants argue that Karner is entitled to qualified immunity since he "arguably" had probable cause to arrest Miller. (Mot. 10). Third, Defendants argue that Miller's state law claim for malicious prosecution fails, by virtue of the fact that Miller cannot satisfy all of the elements of the claim. Finally, Defendants argue that the Village is entitled to

summary judgment on the statutory indemnification claim because no employee of the Village is actually liable to Miller. Miller argues, in opposition to the motion for summary judgment, that there was no probable cause to arrest her and that Karner is not entitled to qualified immunity. Miller, however, concedes that "Karner is entitled to summary judgment on the malicious prosecution claim." (Ans. 14).

I. Probable Cause to Arrest Miller

At issue with respect to both Miller's Section 1983 claim is whether or not a reasonable jury could find that probable cause did not exist for Karner to arrest Miller. Pursuant to Seventh Circuit precedent, "[a] finding of probable cause absolutely bars a claim for false arrest under § 1983." *Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007). Furthermore, the Seventh Circuit has found that a defendant can defeat a Section 1983 claim for false arrest if there was probable cause to arrest the plaintiff for any offense and that the probable cause need not be limited to the offense charged. *Williams v. Rodriguez*, 509 F.3d 392, 399 (7th Cir. 2007). According to Defendants, no reasonable jury could conclude other than that probable cause existed to arrest Miller at the time she was arrested and, therefore, Miller's Section 1983 claim must fail. In opposition to summary judgment, Miller has not challenged Defendants' legal conclusion that a showing of probable cause would defeat Miller's Section 1983 claim. Miller has, however, challenged Defendants' assertion that Karner had probable cause to arrest Miller.

4

A. Facts Relating to Miller's Arrest

Both parties, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, have submitted statements of facts relating to summary judgment. In these statements, the parties agree on many of the basic underlying facts surrounding Miller's arrest. Miller objects to facts presented by Defendants relating to Karner's thoughts and state of mind prior to the arrest. Defendants also object to the relevance of facts included in Miller's Local Rule 56.1 Statement of Additional Facts.

1. Undisputed Facts Relating to the Arrest

The parties agree that on April 12, 2006, Miller sought medical treatment for her daughter at the Ingalls Family Care Center in Flossmoor, Illinois ("Ingalls"). (SF Par. 4); (RSF Par. 4). The parties also agree that on May 15, 2006, a resident of Flossmoor named Susan Palmer ("Palmer") filed a report with the Village police department alleging that she was receiving bills in the name of Miller but with Palmer's address on the bills both at her former residence and at the residence to which she had recently moved. (SF Par. 5-6); (RSF Par. 5-6). The bill that Palmer received at her new address in Miller's name but containing Palmer's address was from the billing agent for Ingalls. The bill was sent directly to Palmer's new address and had not been forwarded from Palmer's previous address. (SF Par. 8-9); (RSF Par. 8-9). Palmer then contacted Ingalls to inquire as to why the bill with Miller's name but with Palmer's address was sent to her. Palmer subsequently filed the police report. (SF Par. 16); (RSF Par. 16). The parties agree that "[w]hen Palmer

made the police report, she also told the officer that she did not know Leela Miller, that [Miller] was not authorized to use [Palmer's] address as a billing address, that [Palmer] was a prior victim of identity theft, and that [Palmer] had not received medical treatment from Ingalls." (SF Par. 18); (RSF Par. 18). Karner was assigned to investigate Palmer's complaint and opened an investigation. (SF Par. 20); (RSF Par. 20).

The parties agree that Karner took several steps to investigate Palmer's complaint. First, Karner reviewed the police report and learned that Miller's name was on the bill that was sent to Palmer's address. (SF Par. 21); (RSF Par. 21). Second, Karner investigated Palmer's prior identity theft complaint and determined that there did not appear to be a link between the two cases. (SF Par. 22); (RSF Par. 22). Third, Karner contacted the billing agent for Ingalls and learned the full contact information that the billing agent had on file for Miller, which listed (1) Palmer's former and present addresses, (2) a phone number, (3) a driver's license number, and (4) a last place of employment at Governor's State University. (SF Par. 25-26); (RSF Par. 25-26). Fourth, Karner searched the police department database operated by the Illinois Secretary of State and found a current address listed for Miller, located in Orland Park, IL. (SF Par. 27); (RSF Par. 27). Fifth, Karner found no information to indicate that Miller ever lived at either of the addresses on file with the Ingalls billing agent. (SF Par. 29); (RSF Par. 29). Sixth, Karner sought and received a grand jury subpoena for the telephone number for Miller listed in the records of Ingalls' billing agent and learned that the number had been assigned to a person who

was not Miller, more than one year before Miller visited Ingalls. (SF Par. 31); (RSF Par. 31). Seventh, Karner called the telephone number for Miller on file with Ingalls and learned that the third person to whom the number belonged had never heard of Miller and had never been to Ingalls. (SF Par. 32); (RSF Par. 32). Eighth, Karner visited the address on file for Miller with the Illinois Secretary of State and learned that Miller did not reside there, that the owner did not know Miller, and that the property had been vacant prior to the time that the present owner moved in. (SF Par. 34); (RSF Par. 35). Ninth, Karner visited Governor's State University and learned that Miller had never been employed there but that she was involved in a school-organized choir. (SF Par. 34); (RSF Par. 34). Tenth, Karner located Miller at Governor's State University and asked her whether she had ever been to Ingalls, to which she responded that she had. (SF Par. 38); (RSF Par. 38). Finally, Miller placed Karner under arrest and took her into custody. (SF Par. 39); (RSF Par. 39).

The parties also agree that immediately following her arrest, Miller was then charged with theft of services to Ingalls for providing false billing information in an attempt to avoid payment of services, which was a misdemeanor. (SF Par. 41); (RSF Par. 41). When Miller appeared in court with counsel, on a later date, Karner was not present and the judge dismissed the case. (SF Par. 43); (RSF Par. 43).

2. Miller's Objections to Defendants' Statements of Fact

In their Local Rule 56.1 Statement of Facts, Defendants have included several facts relating to Karner's subjective beliefs of whether there was probable cause

7

throughout the investigation. (SF Par. 23-24, 46-50). Miller has objected to these statements of fact pertaining to Karner's state of mind, arguing that these statements are neither relevant nor admissible. (RSF Par. 23-24, 46-50). The standard for assessing probable cause is whether "'the facts and circumstances within [an officer's] knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [individual] had committed or was committing an offense.'" *Reynolds*, 488 F.3d at 765 (quoting *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964)). Thus, probable cause is reviewed by an objective standard and an "officer's subjective belief as to the legal basis for an arrest is irrelevant." *Potts v. City of Lafayette, Ind.*, 121 F.3d 1106, 1113 (7th Cir. 1997). Therefore, we agree with Miller that Defendants' statements of fact pertaining to Karner's specific state of mind are irrelevant and are not admissible. We have not considered these statements in ruling on this motion.

### 3. Defendants' Objections to Miller's Additional Statements of Fact

Miller has included in her Local Rule 56.1 Statement of Additional Facts, several statements relating to Miller's background, the circumstances of Miller's treatment at Ingalls, and other facts that were not a part of Karner's investigation of Miller. For example, Miller states that she is, in fact, insured under a health insurance plan and that the medical treatment for Miller's daughter at Ingalls was covered under that insurance and paid for by the insurer. (SAF Par. 4). Miller has not indicated that these additional facts were discovered or became part of Karner's

investigation of Miller. Defendants have objected to all facts in Miller's Statement of Additional Facts that were not directly part of Karner's investigation of Miller, arguing that these facts are irrelevant to the probable cause inquiry and are, therefore, inadmissible. When assessing the reasonableness of an officer's arrest for the purpose of determining whether probable cause existed, the Seventh Circuit has found that the issue "turns on what the officer knew, not whether he knew the truth or whether he should have known more." *Reynolds*, 488 F.3d at 765. Thus, the statements of additional fact offered by Miller that were not alleged to be a part of Karner's actual investigation into Palmer's complaint, are not relevant to the issue of whether Karner had probable cause to arrest and charge Miller. These statements are, therefore, inadmissible for the purpose of determining probable cause. We have not considered these statements of additional fact in determining whether a reasonable fact finder could find probable cause.

There are no material disputes between the parties regarding the specific actions taken by Karner in investigating Palmer's complaint, the specific facts learned by Karner throughout that investigation, and specific events that occurred as a result of the investigation.

### B. Probable Cause Standard

If Defendants can show that no reasonable finder of fact could conclude other than that Karner had probable cause to arrest Miller for a crime at the time he made the arrest, Miller's Section 1983 false arrest claim would fail. *Id.* As stated above,

9

the standard for assessing probable cause is whether "'the facts and circumstances within [an officer's] knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [individual] had committed or was committing an offense.'" *Id.* (quoting *Beck*, 379 U.S. at 91). Although probable cause requires more than "bare suspicion, . . . it does not require evidence sufficient to support a conviction." *Holmes*, 511 F.3d at 679. The existence of probable cause turns "'not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer – seeing what he saw, hearing what he heard.'" *Kelley v. Myler*, 149 F.3d 641, 646 (quoting *Mahoney v. Kesery*, 976 F.2d 1054, 1057 (7th Cir. 1992)). Moreover, in determining whether probable cause existed, the court should look to the applicable state law for the crime that was allegedly being committed. *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 761 (7th Cir. 2006).

In this case, Defendants allege that Karner had probable cause to arrest Miller for the state law crimes of identity theft and theft of services. With respect to the Section 1983 false arrest claim, it is not necessary for Defendants to show that Karner had probable cause to arrest Miller for both crimes, as long as Defendants can show that probable cause existed to arrest Miller for any offense. *Williams*, 509 F.3d at 399.

### 1. Identity Theft

The crime of identity theft in Illinois is defined as the knowing use of "any personal identifying information or personal identification document of another person to fraudulently obtain credit, money, goods, services, or other property. . . ." 720 ILCS 5/16G-15(a)(1). The Illinois legislature has defined "personal identifying information" to include "a person's address" and "a person's telephone number," and a person's "place of employment." 720 ILCS 5/16G-10(b)(2)-(3), (6). Thus, the issue with respect to identity theft is whether Karner had probable cause to believe that Miller knowingly used another person's name, telephone number, or place of employment for the purpose of obtaining goods or services.

2. Theft of Services

The crime of "theft of labor or services or use of property" ("theft of services") in Illinois is defined as knowingly "obtain[ing] the temporary use of property, labor, or services of another which are available only for hire, by means of . . . deception." 720 ILCS 5/16-3(a). In this case, it is undisputed that Karner learned that Miller had visited Ingalls and utilized the services at Ingalls. (SF Par. 38); (RSF Par. 38). Thus, the issue with respect to theft of services is whether, based on the information uncovered in Karner's investigation, Karner had probable cause to believe that Miller knowingly obtained those services at Ingalls by means of deception.

### 3. Probable Cause With Respect to Identity Theft and Theft of Services

In this case, the undisputed facts establish that there was substantial evidence to support Karner's conclusion that Miller had committed the crimes of identity theft and theft of services at the time he arrested Miller. Based on the information available to Karner, the undisputed facts establish that it was reasonable to believe that Miller provided the addresses and phone numbers of two other individuals and an incorrect place of employment at the time she obtained medical treatment for her daughter. First, Karner had the police report filed by Palmer which alleged that bills were being sent in Miller's name but with Palmer's address to Palmer's previous address and to Palmer's current address. (SF Par. 8, 9, 16, 18); (RSF Par. 8, 9, 16, 18). Second, Karner the information from Palmer that she had never before visited Ingalls, and thus knew that the bill for medical service could not have been for Palmer. (SF Par. 18); (RSF Par. 18). Third, Palmer had the information from Ingalls' billing agent, which indicated that the records for Miller listed two addresses, both of which belonged to Palmer, a phone number that also did not belong to Miller, and a place of employment where Miller was not an employee. (SF Par. 25-26, 19, 31-32, 34); (RSF Par. 25-26, 19, 31-32, 34). There is no evidence in the record that establishes that any other information was learned throughout the investigation that might have suggested to Karner that Miller was not engaging in identity theft or theft of services. There is also no evidence in the record to suggest that Karner did not act in good faith.

Based on the evidence that is undisputed in the record, no reasonable jury

could conclude other than that Karner had probable cause to arrest Miller. In arguing that there was not probable cause, Miller relies mainly on information that Miller admits Karner did not have at the time of arrest. For example, Miller argues that Karner did not know whether the medical bill at Ingalls was actually paid, whether Miller was insured at the time, or whether the hospital was even concerned about non-payment for the services provided to Miller. (Ans. 12). Miller cites to the Seventh Circuit decision in *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003), in support of her argument that police officers should not be able to "blind themselves" to fact inquiries. (Ans. 13). However, in *Beauchamp*, the Seventh Circuit was addressing the issue of when an officer's actions rise to the level of "reckless disregard for the truth" which is "demonstrated by showing that the officer[] entertained serious doubts as to the truth of [the complaining witness'] statements, had obvious reasons to doubt the accuracy of the information reported, or failed to inform the judicial officer of facts they knew would negate probable cause." 320 F.3d at 743. However, the evidence in the record does not support any contention that Karner either purposefully blinded himself to factual inquiries in the investigation or that his actions rose to the level of reckless disregard for the truth. As stated above, the sole issue with respect to probable cause is whether there was reasonably trustworthy information available to Karner at the time of the arrest. *Reynolds*, 488 F.3d at 765. It is irrelevant whether the information possessed by Karner was later discredited or whether there was a possibility that other information could have been discovered which might have resulted in a lack of probable cause to

13

arrest Miller. *Id.* While we sympathize with an individual who may have been arrested with possibly no fault of her own, however, the question before us is whether Karner had probable cause to arrest Miller. Every piece of information relating to Miller that Karner investigated supported Karner's conclusion that there was probable cause to arrest Miller. We note that identity theft is a serious problem in this country and the facts in this case reflects that Karner was doing his job as an officer to protect the public from theft of services and identity theft. Based upon the undisputed facts, no reasonable trier of fact could conclude other than that Karner had probable cause to arrest Miller. Therefore, Miller's Section 1983 false arrest claim fails and we grant the motion for summary judgment on that claim.

II. Qualified Immunity

Defendants argue that even if the undisputed facts did not establish probable cause, Karner is still entitled to qualified immunity with respect to Miller's Section 1983 false arrest claim, since a reasonable officer "*could*" have believed that Miller's arrest and imprisonment were lawful. (Mot. 10)(emphasis in original). The doctrine of qualified immunity shields public officials, including police officers, from liability resulting while performing their discretionary duties "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Shipman v. Hamilton*, 2008 WL 852144, at *2 (7th Cir. 2008)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Seventh Circuit employs a two-step process for analyzing qualified immunity: "(1) whether the facts,

taken in the light most favorable to the plaintiff, show that the defendants violated a constitutional right; [and] (2) whether that constitutional right was clearly established at the time of the alleged violation." *Chelios v. Heavener*, 2008 WL 746842, at *9 (7th Cir. 2008)(citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The issue with respect to qualified immunity once again is whether "'a reasonable police officer in the same circumstances and with the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law.'" *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998)(quoting *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997))(emphasis in original).

Miller has again not challenged Defendants' legal conclusions with respect to qualified immunity, but instead argues that the facts do not establish that probable cause existed to arrest Miller. However, as with her arguments detailed above, Miller relies mainly on information that she admits Karner did not have at the time of the arrest and charge. Because we have concluded that there was probable cause to arrest Miller, Karner is entitled to qualified immunity and Miller's Section 1983 false arrest claim fails for that reason also.

III. Elements of Malicious Prosecution Claim

Defendants argue that Miller's state law claim for malicious prosecution also fails since the undisputed facts establish that there was probable cause to arrest Miller and because Miller has put forth absolutely no evidence of malice on the part of Karner. Therefore, Defendants argue that Miller has not met all of the elements of

15

her state law claim for malicious prosecution and, thus, that claim fails for that reason. To succeed on a malicious prosecution claim under Illinois law, Miller would have to show "(1) that defendants began or continued the original criminal proceeding; (2) plaintiff received a favorable termination; (3) probable cause did not exist; (4) malice was present; and (5) plaintiff suffered damages." *Aguirre v. City of Chicago*, 2008 WL 943783, at *5 (Ill. App. Ct. 2008); *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996). In opposing summary judgment, Miller has abandoned her state law claim for malicious prosecution and stated "Plaintiff, however, agrees that Karner is entitled to summary judgment on the malicious prosecution claim." (Ans. 14). Therefore, because Miller has not met the elements of the state law claim for malicious prosecution and because Miller has abandoned this claim, Defendants are entitled to summary judgment on the state law claim for malicious prosecution.

IV. Indemnification

In her complaint, Miller includes a claim for statutory indemnification pursuant to 745 ILCS 10/9-102 ("Section 102"). Section 102 states that "[a] local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article." 745 ILCS 10/9-102. As we have found above, Defendants are entitled to summary judgment on all of Miller's claims against Karner, individually. Pursuant to Section 102, the Village is only liable for

16

indemnification to the extent that there is liability on the part of one of the Village's employees. 745 ILCS 10/9-102. Since this court has found that Defendants are entitled to summary judgment on all claims against Karner there are no remaining claims against any Village employee. Therefore, Defendants are also entitled to summary judgment on Miller's statutory indemnification claim.

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion for summary judgment in its entirety.


_____
Samuel Der-Yeghiayan
United States District Court Judge


Dated: May 29, 2008